UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**PASQUALE STISO,**<br><br>**Defendant.** | Criminal No. 14-484<br><br>**OPINION** |

This matter comes before the Court on pretrial motions by Defendant Pasquale Stiso and the Government's motion for reciprocal discovery. The Court addressed several of Stiso's motions in its Order, dated July 10, 2015. ECF No. 80. This Opinion will address the remaining motions.

As discussed in more detail below, the Court grants Stiso's request to file additional motions. The Court grants in part and denies in part Stiso's motion to compel the Government to preserve and disclose all rough notes and draft reports prepared by investigative agents in this case. The Court denies the rest of Stiso's motions. Finally, the Court grants the Government's motion for reciprocal discovery.

## I. Background

Because the Court writes this Opinion for the benefit of the parties only, it need not and will not describe the factual and procedural background of this case at much length. On July 17, 2014, the Grand Jury in and for the District of New Jersey charged Mancuso and Stiso in the Six-Count Indictment with wire fraud conspiracy, in violation of 18 U.S.C. § 1349, and wire fraud, in violation of 18 U.S.C. §§ 2, 1343. Mancuso and Stiso are jointly charged with wire fraud conspiracy and one count of wire fraud. Mancuso is also charged with four additional counts of wire fraud.

Each Defendant has submitted his own pretrial motions and has also joined the other's motions. The Government has moved for reciprocal discovery.

Additionally, each Defendant has filed a letter supplementing its pre-trial motions. *See* ECF Nos. 83, 84.

On July 10, 2015, the Court issued an Order resolving several of Defendants' motions. On September 10, 2015, Mancuso plead guilty to the charges in the Indictment. Given that Mancuso has entered a plea of guilty, the Court will discuss all remaining motions issue-by-issue below as they pertain to Stiso only.

## II. Legal Analysis

### A. Motion to Suppress

Stiso moves to suppress wiretap evidence collected pursuant to a wiretap authorization signed by District Judge Susan D. Wigenton. Stiso argues that the Government failed to satisfy the necessity requirement under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522 ("Title III"). Alternatively, Stiso requests a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Stiso argues that a *Franks* hearing is warranted because the affidavit supporting the wiretap authorization – the Affidavit of Special Agent Richard V. Sluszka, dated January 31, 2013 (the "Sluszka Affidavit") – is based on false and misleading statements.

As discussed below, the Government satisfied Title III's necessity requirement, so the Court will deny the motion to suppress. Further, because Stiso has not made a substantial preliminary showing that the Government intentionally or recklessly omitted material information from the Sluszka Affidavit, the Court will not conduct a *Franks* hearing.

#### i. The Government satisfied Title III's necessity requirement.

Under Title III, an application for authorization for the interception of oral, wire, or electronic communications must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This requirement, which is referred to as the necessity requirement, is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). It ensures that wiretaps are

2

"used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." *United States v. Giordano*, 416 U.S. 505, 515 (1974).

Courts have consistently held that the Government is not required to show that it exhausted all other investigative procedures before resorting to electronic surveillance. 18 U.S.C. § 2518(1)(c); *see, e.g., United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997) (citations omitted). "The [G]overnment need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient." *Williams*, 124 F.3d at 418 (citing *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir. 1992) (citations omitted)). It must show that "normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). For instance, a court may authorize the wiretap of a phone utilized by a member of a criminal operation if traditional investigative techniques have proven inadequate to reveal the full nature and scope of the operation. *United States v. Becton*, 601 F.3d 588, 596 (D.C. Cir. 2010). Wiretapping is particularly appropriate when the Government is investigating a sprawling wire fraud conspiracy. *United States v. Zolp*, 659 F. Supp. 692, 710 (D.N.J. 1987).

A reviewing court should test the Government's showing of necessity using a practical and commonsense approach. *Williams*, 124 F.3d at 418 (citations omitted). That approach may take into account affirmations based in part on the experience of a specially trained agent. *Id.*

Here, the Sluszka Affidavit catalogued in detail the investigative efforts undertaken before the Government sought permission to wiretap Mancuso's phones. Those efforts included debriefing at least eight confidential sources, analyzing voluminous records of multiple bank and financial accounts, and conducting physical surveillance of Mancuso. Sluszka Aff. 29-32; 34-43; 74-82; 84-86; 99-100. Additionally, investigators analyzed pen register and trap and trace data, which showed that Mancuso was not in regular contact with architects, attorneys, appraisers, developers, consultants, municipalities, and the like, which one would expect if Mancuso were involved in legitimate real estate projects. *Id.* 27; 64-70. Investigators also reviewed consensually recorded telephone conversations and text messages between confidential sources/victims and Mancuso. These communications indicated that Mancuso provided conflicting details about the real estate deals in which he was purportedly participating and made false representations concerning his whereabouts. *Id.* 27; 45-57.

The Sluszka Affidavit then explained that wiretap interceptions were still necessary "to gain a more complete picture of Mancuso's illegal activities, and in order to obtain evidence to fully prosecute and convict Mancuso, the other targets of the investigation, and others as yet unknown." Sluszka Aff. 71. And it specifically detailed why the above-described efforts had fallen short of achieving the goals of the investigation and why other methods, shy of wiretap orders, would also likely fall short. For instance, Agent Sluszka explained that the confidential sources/victims "were not in a position to have meaningful conversations with Mancuso," "not in a position to identify any co-conspirators, accomplices, or aiders and abetters of Mancuso," or "in a position to learn what Mancuso and the other subjects of the investigation [were] actually doing with the victims' money." *Id.* 73-82. Agent Sluszka further explained that a potential cooperating witness may "refuse to cooperate and, moreover, alert Mancuso and/or other family members as to the investigation. *Id.* 83. And Agent Sluszka explained that "although an undercover agent could theoretically pose as an interested investor, the depth of the evidence gathered through such an operation would be limited; indeed, it would be akin to the types of information the cooperating victims [had] already been able to provide." *Id.* 86-87.

The Sluszka Affidavit contains precisely the sort of detail that Title III requires. *United States v. Heilman*, 377 F. App'x 157, 186 (3d Cir. 2010); *see also United States v. Mainor*, 393 F. App'x 10, 14 (3d Cir. 2010) (affirming necessity finding and rejecting the defense claim that "continued reliance on a confidential informant would have yielded adequate evidence," where the affiant "explained that although the confidential source had indeed provided useful information, he ... had been unable to provide information regarding the supply source of [the defendant's drugs]"); *United States v. Vastola*, 670 F. Supp. 1244, 1281-82 (D.N.J. 1987) (necessity established where a "'sting' operation would not have been as likely to provide information about the identities of all of the persons involved in various activities and the scope of their involvement"). Further, the Court finds that the wiretap application came after the investigators had "engaged in an adequate range of investigative endeavors." *Becton*, 601 F.3d at 597. Accordingly, Stiso's motion to suppress the recorded conversations obtained from the wiretaps based on a lack of necessity will be denied.

      **ii.** A *Franks* hearing is not warranted.

Alternatively, Stiso asks the Court to hold a *Franks* hearing regarding alleged omissions in the Sluszka Affidavit. Because Stiso has not made a substantial preliminary showing that the Government intentionally or recklessly omitted material information from the Sluszka Affidavit, the Court will deny his request.

The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search warrant or wiretap affidavit. *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006). "There is . . . a presumption of validity with respect to the affidavit supporting the search warrant," which may be refuted during a *Franks* hearing. *Franks*, 438 U.S. at 171. A defendant seeking a *Franks* hearing "must make two 'substantial preliminary showings': (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) that the false statement or omission was necessary to the finding of probable cause." *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012) (citing *Franks*, 438 U.S. at 155-56). The substantial preliminary showing requirement cannot be met by "mere conclusory statements," or "conclusory assertions that the allegations in the affidavit were false." *United States v. Taylor*, 154 F.3d 675, 680 (7th Cir. 1998); *see also Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory. . . ."). Failure to make such a showing dooms the hearing request. *Rigaud*, 684 F.3d at 173.

Here, Stiso argues that the Government omitted several pieces of information about the victims. However, contrary to Stiso's arguments, the allegedly omitted information about the victims is actually included in the Sluszka Affidavit. First, Stiso claims that the Sluszka Affidavit is deficient because it fails to mention that Victims 2 and 3 did not deal with Mancuso, but were instead induced by Victim 1 to invest money. But the Sluszka Affidavit states that "Victim #2 and Victim #3 told agents that they gave approximately $420,000 to their friend, Victim #1, to be invested in projects by Mancuso." Sluszka Aff. ¶ 29. Second, Stiso claims that the Government failed to mention that Victim 4 did not deal directly with Mancuso. However, the Sluszka Affidavit explicitly states that "Victim #4 did not have any direct dealings with Mancuso." *Id.* ¶ 17. Third, Stiso claims that the Sluszka Affidavit did not disclose that Victim 1's bankruptcy was contested as fraudulent. To the contrary, the Sluszka Affidavit states that "Victim #1 has filed for bankruptcy, and a creditor has objected to Victim #1's bankruptcy petition asserting fraud." *Id.* ¶ 16. Fourth, Stiso argues that the Sluszka Affidavit omitted information that Victims 2 and 3 obtained a default judgment against

5

Mancuso, which suggests that the money given to Mancuso was merely a loan. However, the Sluszka Affidavit stated explicitly that "Victim #2 and Victim #3 had filed a civil lawsuit against . . . Mancuso." *Id.* ¶ 76.

Stiso next argues that while the Sluszka Affidavit states that Victim 7 indicated that Mancuso did nothing wrong, this information is buried within the affidavit. The Court disagrees. In a full paragraph labeled "Victim #7" the Sluszka Affidavit states that "During the meeting with agents, Victim #7 indicated his/her belief that Mancuso was not engaged in illegal activities. . . ." Sluszka Aff. ¶ 81. This information is not buried. Rather, it is in the center of the primary paragraph that describes Victim 7.

Stiso also claims that the Sluszka Affidavit depicted Mancuso negatively by omitting information about an old wiretap application by the Began County Prosecutor's Office. Stiso alleges that the wiretaps under that application were later suppressed as illegally obtained. However, the information regarding that wiretap was not relevant to probable cause. Rather, it was provided under Section 2518(1)(e), which requires disclosure of all previous applications involving the same target. Furthermore, the Sluszka Affidavit explicitly stated that the Government was not privy to the contents of the Bergen County wiretaps because "those wiretap(s) have been sealed by the state court and may have been suppressed." Sluszka Aff. ¶ 98.

Finally, in his letter supplementing his motion to suppress, Stiso adds an argument that the Sluszka Affidavit is deficient because it failed to disclose that Mancuso was currently acting as a confidential informant for the Government. However, the Government represents that Mancuso ceased acting as a confidential informant in June 2011. Further, Stiso has not made a substantial preliminary showing that Mancuso was a confidential informant when the Sluszka Affidavit was presented to Judge Wigenton. Notably, the record lacks any affidavit or declaration from Mancuso concerning his cooperation. Moreover, even if Mancuso were acting as a confidential informant, Stiso provides no explanation for why that is relevant to the finding of probable cause. The Court will thus deny Stiso's motion.

### B. Dismissal of the Indictment

Stiso next moves to dismiss the entire Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). Specifically, Stiso argues that the Indictment is

deficient because the amount of funds allegedly transferred is not adequately pleaded.

In analyzing a motion to dismiss under Rule 12, the Court must accept as true the facts as alleged and determine if those facts constitute a violation of the law under which the defendant is charged. *United States v. Zauber*, 857 F.2d 137, 144 (3d Cir. 1988). In assessing an indictment's sufficiency, the Court looks to whether it: (1) contains the elements of the offense charged, (2) sufficiently informs the defendant of the charge against which he must defend, and (3) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). Generally, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989).

Here, the Indictment contains the elements of the offense changed and sufficiently informs Stiso of the charges against him. The Indictment alleges that Defendants knowingly conspired to devise and execute multiple schemes to defraud victims of money by inducing them to put their money in investments that did not exist, in investments in which Defendants had no involvement, or in investments that were materially different than what was promised. The Indictment also sufficiently sets forth that Defendants used interstate wires to carry out the fraud. These are all of the elements necessary to satisfy the conspiracy and wire fraud statutes. 18 U.S.C. §§ 1343, 1349.

Notably, Stiso has not cited a single authority for the proposition that the Indictment must identify each individual time that Stiso engaged in an illicit transfer of money. The Indictment clearly identifies the illicit acts upon which the conspiracy was based, as well as the specific wire transfers that support the individual wire fraud counts by amount, approximate date, origin, and destination. Nothing more is required.

Further, the Indictment does not present any future double-jeopardy concerns. An indictment must contain only "enough detail that [the defendant] may plead double jeopardy based on the same set of events." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001). "Traditionally, courts have been understandably reluctant to interfere and require more particularity on potential

7

double jeopardy grounds; it is a most difficult task to look ahead down the road and predict what future crimes may be charged by a subsequent indictment." *United States v. Stricklin*, 591 F.2d 1112, 1118-19 (5th Cir. 1979). Generally, the more detailed the indictment, the less concern with leaving the defendant open to future prosecution arising out of the same events. *Id.* Here, the Court finds that the Indictment is sufficiently detailed to enable Stiso to plead an acquittal or conviction in bar of future prosecutions for the same offense.

In short, the level of detail and description in the Indictment is more than adequate under the Federal Rules of Criminal Procedure and the Constitution. The Court will thus deny Stiso's motion to dismiss.

### C. Request for a Bill of Particulars

Stiso also requests that the Government provide a bill of particulars under Federal Rule of Criminal Procedure Rule 7(f). Specifically, Stiso seeks (1) the identity of all "others"/co-conspirators with whom Defendants allegedly conspired; (2) the names/identities of all alleged "solicited investors" "victims" that the Defendants allegedly solicited; (3) the persons to whom the Defendants made false representations regarding the tickets scheme; (4) the actual amounts, dates, and locations of all wire transfers relevant to the Indictment; (5) an accounting of whether the Defendants were present at any meetings where overt acts in furtherance of the alleged conspiracy occurred and, if so, the dates and locations of those meetings; (6) any and all documentation of the Defendants' actual participation in the offense charged; (7) a list of which investments opportunities were fraudulent; (8) the total amount of loss the indictment covers and the names/identities of persons who allegedly invested with the Defendants, including the dates and times of each investment; and (9) the locations where the conspiracy took place (besides New Jersey).

A bill of particulars is not an investigative or discovery tool. *United States v. Ordaz-Gallardo*, 520 F.Supp.2d 516, 521-22 (S.D.N.Y. 2007). Rather, it "is meant to apprise the defendant of the essential facts of a crime . . . ." *Id.* Thus, a court should grant a demand for a bill of particulars only if an indictment is so vague that it "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989); *United States v. Zolp*, 659 F. Supp. 692, 706 (D.N.J. 1987). "The prosecution need not particularize all of its evidence." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). Further, a bill of particulars is not

8

necessary where the Government has provided the defendant with extensive discovery concerning its evidence and witnesses. *United States v. Chen*, 378 F.3d 151, 162-63 (2d Cir. 2004). The decision to grant a bill of particulars rests within the "sound discretion of the district court." *Davidoff*, 845 F.2d at 1154.

Here, the Government has provided Stiso with a 17-page single-spaced Criminal Complaint that detailed the fraudulent schemes and Stiso's participation in them. Stiso has also been provided with a detailed Indictment and voluminous discovery, including wiretap recordings. Moreover, the Government has met with Stiso and his lawyer multiple times to discuss its theory of this case.

Together, the Criminal Complaint, Indictment, and the extensive discovery already disclosed to Stiso provide him with more than sufficient information to understand the nature of the charges against him, prepare his defense, and avoid surprise at trial. This Court will not require the Government to particularize all of its evidence. Stiso's request for a bill of particulars is therefore denied.

### D. Request to Sever Trial

Stiso moves to sever the trial. Because Mancuso has plead guilty to the changes in the Indictment, the Court will deny this request as moot.

### E. Motion to Preclude the Government from Introducing Mancuso's Statements in its Case-in-Chief

Stiso seeks to preclude the Government from introducing, during its case-in-chief, Mancuso's (1) wiretap statements to FBI Task Force Officer Joseph Nicolosi; (2) statements made during proffer sessions; and (3) post-arrest statements.

At the outset, the Government notes in its papers that it intends to use Mancuso's proffer statements only "to cross-examine [Mancuso] and to rebut any evidence or arguments offered on [Mancuso's] behalf." Memorandum of Law of the United States in Opposition to Defendants' Pretrial Motions, ECF No. 95, at 44. Because Mancuso has plead guilty to the charges in the Indictment, the Court denies this request as moot.

Similarly, because Mancuso has plead guilty and will no longer be a defendant in this proceeding, Mancuso's post-arrest statements would amount to inadmissible hearsay when used against Stiso. Statements or admissions by a co-conspirator are not hearsay and are admissible under Rule 801(d)(2)(E), so long as

9

the statements in question were made in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). Here, the post-arrest statements would not fall under the co-conspirator exception, as they were made after the alleged conspiracy and were not in furtherance of it. Consequently, the Court will grant this request.

Lastly, Stiso adopts Mancuso's argument that the wiretaps of Mancuso's conversations with Officer Nicolosi are not probative of the conspiracy or wire fraud offenses and are, thus, not relevant. Stiso's adopted argument is unavailing. The threshold for relevance is low. *See United States v. Paz*, 124 F. App'x. 743, 746 (3d Cir.2005) ("[R]elevance is not a difficult condition to satisfy under the Federal Rules of Evidence.") Mancuso's statements to the Officer are probative of the fact that Mancuso was aware that he was engaging in an illegal, multi-million dollar Ponzi scheme and that he was attempting to stymie the investigation. Moreover, these statements do not constitute inadmissible hearsay, as they fall under the co-conspirator exception. Fed. R. Evid. 801(d)(2)(E). The Third Circuit has held that "[A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *United States v. Pecora*, 798 F.2d 614, 630 (3d Cir. 1986). Here, the Ponzi scheme that Mancuso and Stiso were engaged in was a continual one. In addition, the statements made by Mancuso were intended "not only to cover up [Mancuso's] past participation in criminal behavior, but to shield the ongoing conspiracy as well," by impeding law enforcement. *Pecora*, 798 F.2d at 630. Thus, since Mancuso's statements are relevant and fall under the co-conspirator exception to hearsay, Stiso's request to preclude the wiretap statements to FBI Task Force Officer Joseph Nicolosi is denied.

### F. Motion for Discovery of Mancuso's CI File, Information Regarding Informants and Cooperators, the FBI's CI Guidelines, and the DOJ's Informant Guidelines

Stiso seeks the production of Mancuso's CI file with the FBI, information regarding the Government's use of informants and cooperating witnesses in this case, and internal guidelines regarding the use of informants and cooperators by the Government generally.

Under *Rovario v. United States*, 353 U.S. 53, 77 (1957), the Government must disclose the identity of an informant or the contents of the informant's communications when that information is "relevant and helpful to the defense" or "essential to a fair determination of a cause." However, the defendant must first

provide a specific need for the disclosure. *United States v. Brown*, 3 F.3d 673, 679 (3d Cir. 1993). Once a specific need is established, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Rovario*, 353 U.S. at 77.

Stiso has not shown that the requested information is relevant or will be helpful to his defense. The Court will thus deny his requests.

### G. Motion for Exculpatory Evidence

Stiso seeks disclosure of all *Brady* materials as soon as possible. *See Brady v. Maryland*, 373 U.S. 83 (1963). The Court's Order for Discovery and Inspection, dated September 17, 2014 (the "Standing Discovery Order") already requires the Government to comply with its *Brady* obligations. *See* ECF No. 46. And the Court has received no indication that the Government has failed to so. Therefore, no further order regarding those obligations is necessary at this time, and the Court will deny this request as moot.

### H. Requests for Disclosure of all Alleged Co-Conspirator Statements and a Pretrial *James* Hearing

Stiso requests that the Government disclose all alleged co-conspirator statements and that the Court conduct a pretrial *James* hearing to determine the admissibility of those statements. *See United States v. James*, 576 F.2d 1121, 1127-32 (5th Cir. 1978). The Government represents that it has already produced in discovery the statements of Mancuso in its possession, as required by Federal Rule of Criminal Procedure 16. And Stiso has made no showing as to why he is entitled to the statement of any other alleged co-conspirators at this time. The Court will thus deny Stiso's request that the Government disclose all alleged co-conspirator statements as moot.

The Court will also deny Stiso's request for a pre-trial *James* hearing. A *James* hearing would amount to a preliminary mini-trial, which would be a waste of judicial resources and prejudicial to the Government. Rather, the Court will admit co-conspirator statements conditionally and allow the Government to prove the existence of the conspiracy and the connection of those statements to the conspiracy during the course of trial. *See, e.g.*, *United States v. Gambino*, 926 F.2d 1355, 1360 (3d Cir. 1991). This connecting-up procedure has been endorsed by the Third Circuit and is particularly appropriate where, as here, the case involves a

"large amount of interrelated testimony." *United States v. Continental Group, Inc.*, 603 F.2d 444, 456-57 (3d Cir. 1979).

### I. Request for Grand Jury and Other Protected Materials

Stiso next requests that the Government (1) disclose the transcripts of the grand jury proceedings in this matter; (2) review the personnel files of all agents expected to testify for information favorable to the defense pursuant to *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991); and (3) produce transcripts of all consensually recorded calls. The Court will deny all three requests.

As to the grand jury transcripts, a district court may authorize disclosure of that material if a defendant shows a particular need. *United States v. Procter & Gamble*, 356 U.S. 677, 681-82 (1958). Here, Stiso has failed to meet this high burden. While Stiso argues that there is insufficient evidence to establish probable cause against him, the Court finds that the record contains ample evidence of wrongdoing by Stiso. Further, in March 2013, then-Magistrate Judge Arleo reviewed the same allegations against Stiso as set forth in the Criminal Complaint and determined that there was probable cause to charge Stiso with wire fraud conspiracy. The Court will thus deny this request.

Regarding the other two requests, the Government has agreed to review the personal files for all agents expected to testify for *Brady* and *Giglio* material. The Government further represents that it has already produced a copy of all discoverable consensually recorded calls. Thus, the Court will deny those requests as moot.

### J. Preservation and Disclosure of Rough Notes and Draft Reports

Stiso moves to compel the Government to preserve and disclose all rough notes and draft reports prepared by investigative agents in this case. The Government has agreed to preserve all rough notes and reports, so that request is denied as moot. As to Stiso's disclosure request, the Court will order the Government to submit those materials to the Court three days before trial for in-camera review. *See United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983). The Court will then determine which, if any, of those materials the Government must provide to Stiso.

### K. Request to File Additional Motions

Stiso seeks leave to file necessary and additional motions in the future. The Court will grant this request, provided that Stiso complies with the Court's Standing Discovery Order. Additionally, the Court will grant the Government an opportunity to respond to any such motions.

### L. The Government's Request for Reciprocal Discovery

The Government asks this Court to order Stiso to provide reciprocal discovery to it. The right of the Government to reciprocal discovery is firmly established in Rule 16(b)(1) of the Federal Rules of Criminal Procedure. And the Government's motion is unopposed. The Court will thus grant this request.

### III. Conclusion

For the foregoing reasons, the Court grants Stiso's motion to file additional motions. The Court grants in part and denies in part Stiso's motion to compel the Government to preserve and disclose all rough notes and draft reports prepared by investigative agents in this case. The Court also grants in part and denies in part Stiso's motion to preclude the Government from introducing Paul Mancuso's statements in its case-in-chief. The Court denies all other motions by Stiso. The Court grants the Government's request for reciprocal discovery. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 25, 2015**