UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Criminal No. 14-484 |
| **PASQUALE STISO**, | **OPINION** |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.**

      Before the Court is Defendant Pasquale Stiso's ("Stiso") motions for a judgment of acquittal and a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, respectively. For the reasons set forth below, Defendant's motions are **DENIED**.

**I.  BACKGROUND**

      On August 21, 2014, Defendant and his co-conspirator Paul Mancuso ("Mancuso") were charged in a six-count indictment with wire fraud conspiracy, in violation of 18 U.S.C. § 1349, and wire fraud, in violation of 18 U.S.C. §§ 2, 1343—Stiso charged on one count of conspiracy and one count of wire fraud. (ECF No. 42.) Subsequently, on October 14, 2015, Stiso was charged in a superseding indictment, adding five additional wire fraud counts and three new money laundering counts, in violation of 18 U.S.C. §§ 2, 1957, for a total of ten counts. (ECF No. 102.) In a six-day trial commenced on November 16, 2015, Stiso was tried under the ten-count superseding indictment. On November 24, 2015, the jury found Stiso guilty on all counts. After the Government rested its case-in-chief, Stiso timely moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The Court reserved on this motion. After the jury's guilty verdict, Stiso renewed his acquittal motion and, post-trial, supplemented his oral motion with a letter brief. The Government filed an opposition brief. Approximately two weeks prior to sentencing, Stiso raised a motion under Rule 33 seeking to have the Court vacate the guilty verdict returned by the jury and order a new trial. Stiso's motion is predicated on alleged new

1

evidence regarding Paul Mancuso's activities as a confidential informant ("CI"). Oral argument was held on both motions on June 23, 2016.

## II.     STANDARD OF REVIEW

### A.     Federal Rule of Criminal Procedure 29

Rule 29 provides that the district court "on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The defendant seeking relief under Rule 29 bears "a very heavy burden." *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997). In conducting its analysis, the district court must not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). The court must view the totality of the evidence and resolve any inferences and credibility issues in the Government's favor. *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001). If any rational trier of fact could have found proof of guilt beyond a reasonable doubt, based upon the evidence presented at trial, then the motion must be denied. *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002).

### B.     Federal Rule of Criminal Procedure 33

Rule 33 states that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." In the case of newly discovered evidence, the defendant must meet five requirements to succeed on such a motion (the "*Iannelli* test"): "(a) the evidence must be in fact, newly discovered, i.e. discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." *U.S. v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976). Though the decision to grant a new trial lies within the discretion of the court, much like with a motion for acquittal, the defendant has a "heavy burden" of proving these requirements. *United States v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008). Consequently, if the defendant fails to satisfy even one of the above requirements the Rule 33 motion must be denied. *United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002). The Third Circuit maintains that "[c]ourts should exercise great caution in setting aside a verdict reached after fully-conducted proceedings,

and particularly so where the action has been tried before a jury." *Kelly*, 539 F.3d at 182 (internal quotations omitted).

### III. DISCUSSION

#### A. Motion for Acquittal

Since Stiso challenges the sufficiency of the Government's evidence in every count of the superseding indictment, the Court will tackle each count in turn.

##### i. Conspiracy (Count One)

To prove conspiracy, the Government was required to establish the following three elements: (i) at least two people entered into an agreement to conspire to commit wire fraud; (ii) one of the members of the conspiracy knowingly performed an overt act to further the conspiracy; and (iii) the defendant, at some time during the existence or life of the conspiracy, knew the purpose of the agreement and deliberately joined the conspiracy. *See United States v. Conley*, 37 F.3d 970, 976 (3d Cir. 1994). Stiso only disputes the first element, arguing that the Government failed to prove the agreement requirement of the conspiracy count. The Government contends that, contrary to Defendant's assertion, there does not need to be an explicit demonstration of agreement for a jury to find a defendant guilty of conspiracy. Following the Third Circuit Model Criminal Jury Instructions, the Court provided the following instruction to the jury regarding the first element of conspiracy, existence of an agreement:

> The Government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy, to commit the offense of wire fraud. The Government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. . . . What the Government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to

> accomplish a common and unlawful objective. . . . You may find the existence of a conspiracy based on reasonable inferences drawn from the actions and statements of the alleged members of the conspiracy, from the circumstances surrounding the scheme, and from evidence of related facts and circumstances which prove that the activities of the participants in a criminal venture could not have been carried out except as the result of a preconceived agreement, scheme, or understanding.

*See also* Third Circuit Model Jury Instruction § 6.18.371C. Jurors were thus allowed to use reasonable inferences to find such agreement. *See United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) ("[t]he existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding." (internal quotations omitted)). At trial, the Government demonstrated a similar pattern underlying the schemes used by Stiso and Mancuso on the various victims. Moreover, the evidence showed that, acting in concert or separately, Stiso and Mancuso worked to fulfill the goal of their conspiracy—whether it was Stiso vouching for Mancuso prior to the investment or Stiso assuaging victims when no return was forthcoming. The intercepted phone calls between Stiso and Mancuso discussing the victims, the receipt of their money, and the use of said money to pay off gambling debts and other expenses, provided the jury with grounds to infer a criminal agreement. The calls were supplemented by financial records showing the flow of the victims' funds to Mancuso and Stiso. This is more than adequate testimony and evidence to support the reasonable inference that Stiso and Mancuso agreed to conspire to commit wire fraud. Accordingly, the Court rejects Defendant's argument that the evidence was insufficient and is satisfied that a rational jury could find that the Defendant was guilty beyond a reasonable doubt of conspiracy to commit wire fraud.

### ii. Wire Fraud (Counts Two-Seven)

Proving wire fraud requires establishing the following elements beyond a reasonable doubt: "(1) the defendant's knowing and willful participation in a

scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme." *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004); *see also* Third Circuit Model Jury Instruction § 6.18.1343.

### i. Count Two

Stiso makes a two-fold argument: (i) that the Government failed to prove that the $100,000 transfer to Mancuso was for the purpose of a tickets investment and not a loan; and (ii) that Saferstein testified that Stiso did not induce him to invest. Stiso's first argument can be summarily dismissed, as Saferstein testified that the $100,000 was an investment and not a loan. (*See* Trial Tr. 12:20-22, November 19, 2015.) As for the second argument, Stiso contends that since there were no representations made by him to Saferstein prior to or contemporaneous with the investment that the Government failed to prove this wire fraud count. In opposition, the Government first points to the fact that Stiso received a portion of Saferstein's funds from Mancuso, which the Defendant then used for personal expenses. In addition, after he sued Mancuso, Saferstein testified that Stiso engaged him in conversation regarding the ticket investment and promised to help him get his money back, all while never revealing that Defendant had received a portion of these funds. (*See id.* at 25:9-14.) The Government argues that based on this, as well as the similarity to the other wire fraud schemes run by Stiso and Mancuso, the jury could infer Defendant's knowing participation in this wire fraud. The Court finds that the adduced evidence is inter-connected and substantial enough that—viewing it in a light most favorable to the Government—it was sufficient for any rational trier of fact to find beyond a reasonable doubt that Stiso had knowingly participated in the wire fraud scheme related to Saferstein's $100,000 tickets investment.[1]

### ii. Count Three

As for the Mezzancellos' investment in the Matawan property, Stiso argues that the Mezzancellos stated that they were not induced to invest by the Defendant and that while Stiso may have vouched for the investment, since it was unclear whether this was before or after the investment was made, the Government failed

---

[1] Alternatively, Stiso's attempt to knowingly help Mancuso—by offering to assist Saferstein recover the tickets investment that had been split between Defendant and Mancuso—would be acceptable for a jury to find Stiso guilty on Count Two under an aiding and abetting theory.

5

to put forth sufficient evidence for a jury to find wire fraud.  Mark Mezzancello's testimony rebuts these arguments.  Mezzancello testified that Stiso vouched for Mancuso in the run-up to the Matawan investment and even invoked the fact that Mancuso was in business with Saferstein.  (*See* Trial Tr. 99-101, November 17, 2015.)  Relying on these assurances, Mezzancello stated that he borrowed the money to invest in the Matawan property.  (*See id*. at 104.)  Aside from the fact that Stiso did vouch for Mancuso and the investment prior to the Mezzancellos' decision to invest, Stiso's participation in the scheme was demonstrated by the fact that Defendant and Mancuso split the Mezzancellos' money as soon as it was received.  Through this testimony and evidence, the Government met its burden of proof and a rational jury could find beyond a reasonable doubt that Stiso knowingly participated (or aided and abetted) in the wire fraud scheme.

>### iii. Count Four

Similarly, with the Persicos' investment, Stiso argues that the Persicos' CFO, Richard Mach, testified that Stiso did not induce them to invest.  In opposition, the Government points to Mach's testimony about Stiso's presence at a meeting where Mancuso pitched the investment.  (*See* Trial Tr. 57:21-58:23, November 19, 2015.)  Mach testified that it was his understanding that Stiso was "directly involved in the projects," based on Stiso's involvement in meetings between Mancuso and Mach and that Stiso conversed with Mach regarding the Valley Cottage property.  (*Id.* at 62:15-20.)  These conversations continued after the investment, when Stiso—while Mancuso was out of reach—would pacify Mach and reassure him about the Valley Cottage investment and Mancuso.  (*See id.* at 72:1-13.)  Further, the Persicos' $100,000 investment was split by Stiso and Mancuso and then used to pay gambling debts and other expenses unrelated to the alleged investment.  A rational jury could have found from this testimony and evidence that Stiso was a knowing participant (or aiding and abetting) in the scheme underlying the $100,000 Valley Cottage investment.  Consequently, the Court rejects Defendant's argument that the Government's evidence was insufficient to support Count Four and the jury's subsequent finding of guilt.

>### iv. Counts Five and Six

Stiso argues that the Government failed to prove that the Mezzancellos' $175,000 investment in tickets traveled through interstate commerce and thus fails the third element of wire fraud, since the money went from one New York branch to another.  At trial, Senior Special Investigator Robert Amenta testified regarding

the Federal Reserve Bank of New York's Fedwire system. Amenta stated that the system would require all transfers—including intrastate transfers like the instant ones—to pass through processing centers in Dallas, Texas, and East Rutherford, New Jersey. (*See* Trial Tr. 30-31, November 16, 2015.) Since the Government adequately demonstrated the interstate element of wire fraud, there is no basis for granting a Rule 29 motion as to Counts Five and Six.

### *v. Count Seven*

Finally, Stiso argues that acquittal is warranted for Count Seven since Robert Persico was not called to testify as to why he invested in tickets and the Persicos' CFO testified that Stiso did not induce this investment. For the first issue, in his testimony Mach described a meeting where Mancuso represented to the Persicos that he was a ticket broker and promised a thirty percent rate of return. (*See* Trial Tr. 64:2-20, November 19, 2015.) Since Persico invested after this meeting, the testimony satisfactorily supported through inference Persico's intent to invest in tickets, such that the Government was not required to call Robert Persico. (*See id.* at 64:14-20.) As for Stiso's involvement, in an intercepted call Stiso and Mancuso discussed the Persico's ticket investment and the use of that money to pay their gambling debts. Financial records showed Stiso purchasing jewelry and writing a check to his wife with these funds. (*See id.* at 65-67.) Similar to his role with Saferstein post-investment, Mach further testified that Stiso attempted to mollify him on more than one occasion when the former began to worry that the tickets (and other) investments were scams, vouching for Mancuso as someone who "always [came] through for people in the past." (*See id.* at 68:12-69:11.) From all this, a reasonable jury could have credited Mach when he testified that he felt that Stiso "was involved with [them] during the whole course of these transactions." (*See id.* at 68:3-4) (referring to the Valley Cottage and tickets investments.) Therefore, analogous to the wire fraud counts above, the Court finds that the Government presented sufficient testimony and evidence on this count, even in just an aiding and abetting capacity, for a rational jury to conclude beyond a reasonable doubt that Stiso knowingly participated in the wire fraud scheme, and the motion will be denied.

### iii. Money Laundering (Counts Eight-Ten)

Lastly, Stiso argues that since the underlying wire fraud counts were not proven by the Government, the money laundering counts must fail as well. As

discussed above, the Court finds that the Government has adduced sufficient evidence and testimony to adequately prove each of the fraud counts, and thus acquittal is not warranted on the money laundering counts.

### B. Motion for a New Trial

Stiso's Rule 33 motion is predicated on Mancuso's status as a former CI. Stiso asserts that new information has allegedly come to light after trial demonstrating Mancuso's continued involvement as an informant.[2] Stiso argues that this affects (i) the Court's pretrial denial of the suppression of a wiretap as well as a request for additional discovery regarding Mancuso's CI status; and (ii) the submission to the jury of a stipulation at the close of trial that allegedly incorrectly noted the time period of Mancuso's cooperation with law enforcement. Accordingly, Stiso asks the Court to set aside the jury's verdict and order a new trial. In the alternative, Stiso requests that the Court order the Government to provide complete disclosure of the full extent of Mancuso's activities as a CI with any law enforcement agency during the period of the alleged conspiracy.

Regarding suppression of the wiretap, the Court noted in its pretrial opinion that "Stiso has not made a substantial preliminary showing that Mancuso was a confidential informant when the Sluszka Affidavit was presented to Judge Wigenton." (Opinion and Order ("Pretrial Op."), ECF No. 96, 6.) In the same paragraph, the Court continued that "even if Mancuso were acting as a confidential informant, Stiso provides no explanation for why that is relevant to the finding of probable cause." (*Id.*)

In his instant motion, Stiso does not remedy either defect. Instead, relying on speculative inferences regarding alleged informant-related activities with state agencies from earlier this year, Stiso continues to argue that the affidavit underlying the wiretap may have omitted material information regarding Mancuso's CI status. Under the *Iannelli* test, Stiso's speculation and a request to engage in a fishing expedition post-trial does not qualify as newly discovered evidence sufficient to grant a new trial—the first requirement. In addition, in his letter brief and at oral argument, Stiso made no attempt to show how new information regarding Mancuso's CI status would either affect the validity of the

---

[2] Stiso relies on Mancuso's alleged recent co-operation with various state Attorney Generals and speculation as to postponement of Mancuso's sentencing.

wiretap or allow for its suppression at trial—the relevance requirement. At oral argument, expounding on his letter brief, Stiso argued that the necessity requirement under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522 ("Title III"), would be nullified by any newly discovered evidence of Mancuso acting as a CI at that time. However, Stiso does not tie any such speculated CI activity to the criminal conduct underlying this case or even to the FBI, which would put into question Title III's necessity requirement.

Moving past the wiretap and to the requested additional discovery, the Court wrote in its prior opinion that, in his request for Mancuso's CI file and associated discovery, Stiso had "not shown that the requested information is relevant or will be helpful to his defense." (Pretrial Op. at 11.) Again, Stiso does not establish such relevance post-trial or describe how any newly discovered evidence regarding Mancuso's CI activities would probably produce an acquittal—the fourth and fifth requirements.

As for the stipulation read at trial, the Court finds that any newly discovered evidence is insufficient to meet the "heavy burden" necessary to grant a new trial. The Government and Defendant agreed to and read a stipulation into the record at trial, stating the time period when Mancuso was a CI for the FBI. The Government argues that even if newly discovered evidence were to prove Stiso's speculation correct, such CI activities would be with state agencies and the Government's representation would be neither inconsistent nor a misrepresentation. As well, the Government argues that Stiso makes no attempt to demonstrate how any evidence of Mancuso's CI activities post-2011 would be exculpatory or even relevant. The Court finds these arguments persuasive. Mancuso's CI activities were introduced by Stiso at trial to explain that Stiso was, in fact, a victim of Mancuso's scheme and not a co-conspirator, since Mancuso was able to deceive even the FBI while committing the indicted crimes. (*See* Tr. 17:3-19, June 25, 2015.) However, the jury had an opportunity to consider Mancuso's CI activities when they deliberated and chose to reach a guilty verdict nonetheless. Stiso does not show how any further alleged CI activities during that time would prove more than merely cumulative and would probably produce an acquittal. Failing to meet the third and fifth requirements of the *Iannelli* test, the Court finds that a new trial is not warranted based on the stipulation either.

Therefore, considering the speculative nature of the alleged newly discovered CI activities engaged in by Mancuso and the fact that Stiso has not

demonstrated that such evidence would be relevant, not cumulative, and probably produce an acquittal, the motion for a new trial is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motions for a judgment of acquittal and a new trial. An appropriate order follows.

>                    /s/ William J. Martini
> **WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 30, 2016.**